## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| **CRYSTAL FINANCIAL LLC,** | ) | |
| Two International Place, | ) | |
| Boston, MA 02210 | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | Civil Action No. _____ |
| | ) | |
| **ROBERT P. BERNARDI** | ) | |
| 1210 Suffield Drive | ) | |
| McLean, VA 22101 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **NIHAT CARDAK** | ) | |
| 13306 Sturno Drive | ) | |
| Clifton, VA 20124 | ) | |
| | ) | |
| *Defendants.* | ) | |

## VERIFIED COMPLAINT FOR MONEY DAMAGES

Plaintiff, CRYSTAL FINANCIAL LLC ("Crystal" or "Plaintiff"), by its attorneys, files suit against Defendants ROBERT P. BERNARDI ("Bernardi") and NIHAT CARDAK ("Cardak") (collectively "Defendants"), and alleges:

## NATURE OF ACTION

1.    This is an action in diversity to recover damages from Defendants who, as principals of GigaMedia Access Corporation ("Giga") and GigaMedia Holdings Corporation ("Giga Holdings"), fraudulently induced Crystal into loaning $25,000,000 to Giga. When Giga applied to Crystal for a loan, Defendants provided and/or caused others at Giga to provide various financial statements and bank statements purporting to demonstrate that Giga had tens of millions of dollars in its bank accounts and, for the twelve (12) month period ending June 30,

2019, that Giga had sales in excess of $50 million. Since the closing of the loan, not only have Giga and Giga Holdings failed to comply with various obligations under the loan agreements, resulting in defaults thereunder, but Crystal has discovered that Giga, at the direction and under the control of Defendants, blatantly and knowingly falsified the financial records and bank statements it provided during the due diligence phase — documents upon which Crystal reasonably relied when making the Loan to Giga. Moreover, Crystal has become aware that Giga and the Defendants are involved with an ongoing bank fraud and wire fraud investigations being conducted by the federal government. Having realized that Giga obtained a loan for which it would not actually have qualified had it provided its true financial records and had Defendants not fraudulently misrepresented the state of Giga's financial condition, historical financial performance, and results, Plaintiff seeks to recover the money it loaned through the entry of a money judgment and other appropriate relief from and against Defendants.

## THE PARTIES

2.       Plaintiff is a commercial finance company that originates, underwrites, and manages secured debt. It is a limited liability company organized under the laws of the State of Delaware, having its principal place of business at Two International Place, Boston, Massachusetts 02110. Crystal's sole member, Solar Capital Ltd., is a corporation organized under the laws of the State of Maryland, having its principal place of business at 500 Park Ave, New York, New York 10022.

3.       Defendant Bernardi is an adult citizen of the Commonwealth of Virginia and the former Chief Executive Officer, President, and Secretary of Giga.

4.       Defendant Cardak is an adult citizen of the Commonwealth of Virginia and the former Chief Financial Officer and Treasurer of Giga.

2

## JURISDICTION AND VENUE

5.       This Court has subject matter jurisdiction over the state law claims asserted in this complaint under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.       This Court has personal jurisdiction over Defendants pursuant to the provisions of Va. Code § 8.01-328.1.A.1 because Defendants have transacted, and regularly transact, business in the Commonwealth of Virginia, and the causes of action asserted herein arise out of such business. This Court also has personal jurisdiction over Defendants pursuant to Va. Code § 8.01-328.1.A.3 because Defendants caused tortious injury to Plaintiff by acts or omissions in this Commonwealth.

7.       Venue is proper under 28 U.S.C. §§ 127(a) and 1391(b)(1) because Defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8.       The Alexandria Division is the proper division in which to file this Verified Complaint because Defendants "reside" in Fairfax County, Virginia, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Fairfax County.

## NATURE OF ACTION

9.       On or about July 31, 2019, Crystal made a loan to Giga in the amount of $25,000,000.00 (the "Loan"), secured by a security interest upon substantially all of Giga's property and assets (the "Secured Assets"), which Secured Assets included funds that the Defendants fraudulently represented were contained in Giga accounts maintained at the Bank of America. Giga Holdings guaranteed the full and complete performance of the Loan by Giga.

10.     Crystal agreed to make the Loan to Giga based upon financial records and other information provided to Crystal by Defendants and/or by others employed by Giga and acting under Defendants' direction and control.

11.     The financial information provided by Defendants was false, misleading, and inaccurate.

12.     At the times when the Defendants provided the financial information to Crystal, they knew or should have known that the financial information was false, misleading, and inaccurate, and they intended that Crystal would rely on the financial information in determining whether to make the Loan.

13.     Crystal would not have agreed to make the Loan to Giga had it known or had a reason to know that the financial information provided by Defendants was false, misleading, and/or inaccurate.

14.     Since the closing of the Loan, Giga and Giga Holdings have breached several terms of the agreements evidencing the Loan, and thus are in default thereof, and Crystal has discovered information demonstrating that Giga, through the fraudulent acts of the Defendants, falsified certain financial records it provided to Crystal as part of the due diligence process, and upon which Crystal reasonably relied in agreeing to make the Loan.

## FACTS

### A.     The Loan Documents

15.     The Loan is evidenced by a Term Loan Agreement dated July 31, 2019 (the "Loan Agreement") between Crystal, Giga, and Giga Holdings. A true and correct copy of the Loan Agreement is attached as **Exhibit A**.

16.     On July 31, 2019, Giga sent Crystal a letter (the "Payment Direction Letter") authorizing Crystal to disperse the proceeds of the Loan, including the due diligence deposit, to specified accounts and payees. The total amount Giga authorized Crystal to disperse was $25,150,000, including $25,000,000 in proceeds of the loan and a $150,000 diligence deposit. A true and accurate copy of the Payment Direction Letter is attached as **Exhibit B**.

17.     Repayment of the Loan is unconditionally guaranteed by Giga Holdings pursuant to a Guaranty and Security Agreement dated July 31, 2019 (the "Guaranty Agreement") between Crystal, Giga, and Giga Holdings. A true and accurate copy of the Guaranty Agreement is attached as **Exhibit C**. Giga Holdings' sole asset(s) are 100% of the stock of Giga, and thus the Guaranty Agreement is worthless.

18.     Crystal and Giga entered into a letter agreement dated July 31, 2019 (the "Fee Letter") whereby Giga agreed to pay a number of nonrefundable fees in consideration of the agreements in the Loan Agreement. A true and accurate copy of the Fee Letter is attached as **Exhibit D**.

19.     As part of the loan application process, Giga provided Crystal with an Omnibus Secretary's Certificate (the "Secretary's Certificate") to confirm that Giga and Giga Holdings exist in good standing and are duly authorized to enter into the Loan Agreement and the Guaranty Agreement. A true and accurate copy of the Secretary's Certificate is attached as **Exhibit E**. The Loan Agreement, together with the Payment Direction Letter, the Guaranty Agreement, the Fee Letter, and the Secretary's Certificate, and any and all other documents executed in connection with the Loan, are hereinafter referred to as the "Loan Documents."

20.     The Loan Documents comprise the primary agreements that define and describe the relationship between Crystal, Giga, and Giga Holdings with respect to the Loan.

21.     As of November 20, 2019, the outstanding principal and interest on the Loan is $25,415,444.44, exclusive of an early termination fee of $750,000.00, excluding fees, with per diem interest in the amount of $6,597.22 for each and every day from and after that date.

**B.      The Fraud**

22.     As part of the loan application and due diligence process, the Defendants each provided and/or caused others at Giga to provide Crystal with certain bank records and financial statements (the "Financial Documents") purporting to evidence and support Defendants' claims regarding Giga's assets and financial viability. The Defendants represented that the bank statements were from national money-center banks. The Defendants also represented that the financial statements were audited records. To that end, these financial statements were accompanied by supposedly unqualified auditor opinions from highly reputable, national auditing firms. An "unqualified auditor opinion" is an independent auditor's judgment that a company's financial statements are fairly and appropriately presented, without any identified exceptions, and are compliant with generally accepted accounting principles ("GAAP"). Unqualified auditor opinions provide a high degree of assurance as to the veracity and accuracy of a company's financial records and are routinely relied upon by corporate lenders, such as Crystal, when deciding whether to make a loan.

23.     In this instance, in accordance with its normal business practices, Crystal reasonably relied on the Financial Documents and the proffered auditor opinions provided by the Defendants in evaluating Giga's application for the Loan and in ultimately agreeing to make the Loan. Crystal justifiably relied on the Financial Documents, and it would not have made the Loan if it had known that the Financial Documents were false, inaccurate or altered.

24.     After Crystal made the Loan to Giga, Crystal received a grand jury subpoena from the U.S. Department of Justice (the "DOJ") seeking information about Crystal's interactions with Giga, including information concerning financial representations Giga made to Crystal during the due diligence process (the "DOJ Subpoena"). The DOJ Subpoena cover letter indicates that the DOJ Subpoena "has been issued in connection with an official criminal investigation of a suspected felony being conducted by a federal grand jury." Based upon statements in the DOJ Subpoena, the DOJ appears to be investigating Giga and/or individuals associated with Giga, including the Defendants, in connection with possible bank fraud and wire fraud.

25.     Understandably alarmed by the criminal investigation, Crystal engaged StoneTurn Group, LLP ("StoneTurn"), a forensic accounting firm, to perform a review of the financial statements and bank records Giga provided to Crystal during the underwriting process. Simon D.J. Platt, a Partner and Chairman of StoneTurn, communicated his findings to Crystal and memorialized them in an Affidavit ("Platt Affidavit"). A true and correct copy of the Platt Affidavit is attached hereto as **Exhibit F**. StoneTurn's findings are startling.

26.     The Platt Affidavit reveals that the bank records and financial statements provided by Giga and the Defendants contain mathematical errors, typos, and abnormalities that "are numerous and atypical" and that "are consistent with significant indicia of fraud." (Platt Aff. ¶ 24.) Mr. Platt concluded that in his professional opinion, the bank records and financial statements "have very likely been altered and falsified and are consistent with indicia of fraud." (Platt Aff. ¶ 7.)

27.     In particular, the Platt Affidavit indicates that there were twenty-seven "formatting inconsistencies and mathematical errors on [the] bank statements." (Platt Aff. ¶ 8.) For instance, Mr. Platt determined that the March 31, 2019 account balance, which was furnished

by Giga to Crystal, was "misstated by $510,555.78." (Platt Aff. ¶ 9.) Mr. Platt also identified a pair of instances where service fees were not included in the calculation of the month-ending cash balance on certain Bank of America bank statements and that for both instances, there was a comma instead of a decimal point in the service fee's dollar amount. (Platt Aff. ¶ 10.) Such a typo is highly unusual in bank records, which are the product of an automated process and not prone to manual error. That same error where a comma was used instead of a decimal point appeared in a separate JP Morgan Chase statement. (Platt Aff. ¶ 11.) Other anomalies in the bank statements were also documented in the Platt Affidavit. (Platt Aff. ¶ 12.)

28.     Similarly, Mr. Platt identified sixty-four mathematical errors and incorrect disclosures and references in the supposedly audited financial statements. (Platt Aff. ¶ 8.) The records contained "numerous mathematical, grammatical and formatting issues consistent with indicia of fraud." (Platt Aff. ¶ 13.) Such errors and inconsistencies involve numbers that do not coincide with supporting details in the different financial statements; again include commas in the place of decimals in numbers; and have run-on and incomplete sentences, improper paragraph breaks, missing and extra spaces, inconsistent fonts, and inconsistent margins. (Platt Aff. ¶ 13.) Mr. Platt also identified a mathematical error in the 2015 Statement of Cash Flows, where the net increase in cash was not accurately calculated, resulting in a misstatement of the end-of-year cash balance by $95,000. (Platt Aff. ¶ 14.) Furthermore, the changes in accounts receivable, accounts payable and accrued expenses and deferred revenue disclosed in the Statements of Cash Flows in the 2016 financial statements do not agree with the changes in those assets and liabilities between 2015 and 2016. (Platt Aff. ¶ 15.) The Platt Affidavit details numerous other inconsistencies, where different documents either fail to reconcile with one another or affirmatively *contradict* each other. (Platt Aff. ¶¶ 16-20.)

8

29.     Mr. Platt also noticed that one financial document purportedly audited by Baker Tilly, an auditing firm, contained an outdated logo. (Platt Aff. ¶ 20.) The Baker Tilly logo that appeared on the face of the June 2019 record was one that Baker Tilly publicly announced was being replaced in early December 2018. (Platt Aff. ¶ 20.) In Mr. Platt's professional opinion, "these types of issues are not present in financial statements that have been subjected to a full audit." (Platt Aff. ¶ 23.)

**C.     Giga's And Giga Holdings' Numerous Breaches And Defaults Under the Loan Documents**

30.     Giga was required to deliver to Crystal certain depository account control agreements ("DACA(s)" or "Control Agreements") by September 30, 2019, pursuant to Section 4.15(a) of the Loan Agreement. DACAs are tri-party documents executed by a borrower, lender, and the borrower's bank. The essence of DACAs are to provide that upon an event of default the bank, upon receiving notice of the same, will send, and continue to send, the borrower's funds contained in the subject depository account to the lender, as directed or per standing instructions contained within the DACAs. As of the date of this Verified Complaint, Giga has failed to provide the DACAs/Control Agreements to Crystal, despite repeated (and, in retrospect, knowingly false) assurances by Defendant Bernardi that they would be provided.

31.     In fact, on October 23, 2019 Crystal learned via an email from Bank of America that, by a letter from the bank to Giga dated September 19, 2019 (the "Closure Letter"), Giga was notified that the bank had determined to close the subject depository account (and other accounts) and to terminate its relationship with Giga. True and accurate copies of the October 23, 2019 e-mail and the September 19, 2019 closure letter sent by Bank of America are attached as **Exhibit G**. Neither Bernardi nor anyone else from Giga ever informed Crystal that Bank of America had terminated its relationship with Giga and closed the accounts.

9

32.     After Giga provided monthly financials and a compliance certificate for the fiscal month ending July 31, 2019, pursuant to Sections 4.2(c) and (d) of the Loan Agreement, Crystal had several important follow-up questions about inconsistencies within the materials. Despite some initial e-mail correspondence with Defendant Cardak about the financial statements, Defendant Cardak has wholly failed to respond to Crystal's last set of questions sent to him on September 13, 2019, which identified a number of inconsistencies and errors apparent on the face of the documents.

33.     Giga also failed to timely provide the required compliance certificate for the fiscal month ending August 31, 2019, pursuant to Sections 4.1(c) and (d) of the Loan Agreement.

34.     Despite allowing Giga multiple extensions to comply with the Loan Documents, Giga has not provided Crystal with certain insurance certificates and endorsements as required by Sections 4.15(f) and (g) of the Loan Agreement.

35.     While Giga never disclosed any warrants pursuant to Section 3.15 of the Loan Agreement, Crystal was surprised to learn that, according to two separate complaints (the "Wincup Complaints") filed by a Todd Wincup against Giga, Giga had in fact issued warrants to Mr. Wincup.

36.     Giga never provided the original pledged stock representing its equity interests in Vaultize Technologies Properties Limited ("Vaultize") and the corresponding stock powers, despite the fact that Giga was obligated to do so pursuant to the Guaranty Agreement within ten days after closing on July 31, 2019.

37.     Each of Giga's failures identified in paragraphs 30 through 36 independently qualifies as a default under Section 6.1 of the Loan Agreement. Each constitutes a separate breach of the Loan Agreement because none of these defaults were disclosed to Crystal as

expressly required by Section 4.2(a) of the Loan Agreement. Together, this pattern of conduct qualifies as a massive breach of the Loan Agreement.

38.     On or about October 10, 2019, Crystal sent Giga a Notice of Default letter (the "Default Letter"). A true and accurate copy of the Default Letter is attached as **Exhibit H**.

39.     On or about October 21, 2019 Crystal, in its capacity as Term Agent and pursuant to its irrevocable appointment as attorney-in-fact and proxy for and on behalf of Giga Holdings pursuant to various provisions of the Loan Documents, including but not limited to Section 6.3 and Section 7.1 of the Guaranty Agreement, exercised its rights to remove the prior board of directors of Giga and elected Matthew R. Kahn as the sole director on the board of directors of Giga. True and accurate copies of the e-mails and letter attachments Crystal sent to Giga informing them of Crystal's exercising its rights and taking over Giga as of October 21, 2019 are attached as **Exhibits I** and **J** (the "Rights Correspondence").

40.     Under its authority, the new board of directors named John DiDonato as Chief Restructuring Officer of Giga and Brett Anderson as Deputy Chief Restructuring Officer of Giga. Mr. DiDonato is the Managing Director of the Huron Consulting Group, an independent third-party forensic accounting firm ("Huron"). Mr. Anderson is a Senior Director of the Huron Consulting Group. Since being named as the Chief Restructuring Officer and Deputy Chief Restructuring Officer of Giga Messrs. DiDonato and Anderson, and others working with Huron, have moved into Giga's headquarters in Reston, Virginia, and attempted to take control of and investigate the situation with Giga and its business.

41.     Subsequently, under its authority, Huron duly removed Bernardi as Chief Executive Officer, President and Secretary of Giga, and also removed Cardak as Chief Financial Officer and Treasurer of Giga.

42.     Defendant Bernardi and Defendant Cardak were both copied on the notice informing Giga that Defendants Bernardi and Cardak had been terminated as officers.

**D.     Crystal's Post-Default Investigation and Discovery of the Extent of Defendants' Fraud**

43.     After Crystal sent the Default Letter and the Rights Correspondence, Messrs. DiDonato and Anderson, and others working with Huron, physically went to Giga's offices in Reston, Virginia in an effort to take control of Giga's business and assess and investigate the extent of Giga's assets.   The results of their investigation, which is continuing, has been disheartening.

44.     Huron has located and reviewed Giga's actual bank statements and related bank records which, contrary to the Financial Documents provided by Defendants, reveal that Giga has almost no money in the bank, in contrast to the tens of millions of dollars that Defendants had led Crystal to believe was on deposit as demonstrated below:

| Account Number | Statement Date | Purported Statement Beginning Balance | Purported Statement Balance | Actual Statement Beginning Balance | Actual Statement Balance |
|---|---|---|---|---|---|
| x 4505 | 1/31/2019 | $798,921.77 | $246,214.11 | $27,210.85 | $175,894.90 |
| x 4505 | 2/28/2019 | $246,214.11 | $660,751.59 | $175,894.90 | $118,413.34 |
| x 4505 | 3/31/2019 | $660,751.59 | $350,547.26 | $118,413.34 | $169,701.26 |
| x 4505 | 4/30/2019 | $350,547.26 | $120,464.37 | $169,701.26 | $43,785.14 |
| x 4505 | 5/31/2019 | $120,464.37 | $384,287.24 | $43,785.14 | $775,266.38 |
| x 4505 | 6/30/2019 | $384,287.24 | $551,776.77 | $775,266.38 | $565,859.22 |
| x 7020 | 1/31/2019 | $28,147,176.37 | $29,848,542.16 | $112,100.00 | $100.00 |
| x 7020 | 2/28/2019 | $29,848,542.16 | $29,487,695.71 | $100.00 | $100.00 |
| x 7020 | 3/31/2019 | $29,487,695.71 | $31,402,223.66 | $100.00 | $100.00 |
| x 7020 | 4/30/2019 | $31,402,223.66 | $37,833,065.54 | $100.00 | $100.00 |
| x 7020 | 5/31/2019 | $37,833,065.54 | $35,986,690.60 | $100.00 | $100.00 |
| x 7020 | 6/30/2019 | $35,986,690.60 | $37,012,996.56 | $100.00 | $100.00 |

45.     In addition, Giga's actual bank records support the conclusion that Giga has, at most, a few hundred thousand dollars in revenue attributable to contracts, instead of the millions of dollars that Defendants had represented to exist.

46.     Finally, Huron has seen e-mails maintained on Giga's company server reflecting communications between Bernardi and Cardak which indicate that they conspired to provide Crystal with false or doctored Financial Documents knowing that those records were false or misleading and that Crystal would rely on such documents.

47.     Some of the same communications also support the conclusion that Defendants provided the false and misleading Financial Documents to Crystal with the intention to deceive Crystal and induce it into loaning Giga $25,000,000 by relying on the Financial Documents.

48.     In 2019, on information and belief, at the time when Bernardi was Chief Executive Officer, President, and Secretary of Giga and Cardak was Chief Financial Officer and Treasurer of Giga, Giga conveyed to Bernardi and Cardak non-payroll cash distributions of $2,075,000 and $730,999, respectively, with the intention of delaying, hindering, or defrauding existing and future creditors of Giga, including Crystal.

49.     After the closing of the Loan, upon information and belief, at the time when Bernardi was Chief Executive Officer, President, and Secretary of Giga, and Cardak was Chief Financial Officer and Treasurer of Giga, Giga made non-payroll distributions to Bernardi totaling $600,000, and made non-payroll distributions to Cardak for $200,000. These post-closing distributions were either made with the intention of delaying, hindering, or defrauding existing and future creditors of Giga, including Crystal; or were made when Giga was insolvent or had the consequence of rendering Giga insolvent.

## COUNT I: FRAUD

50.     Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 49 of this Verified Complaint, as if set forth fully herein.

51.     Bernardi and Cardak induced Crystal into entering into the Loan Agreement by knowingly and intentionally making fraudulent misrepresentations regarding Giga's assets and financial viability.  Specifically, Bernardi and Cardak made or caused to be made the false and/or misleading statements contained in the bank records and financial statements as described in the Platt Affidavit (Platt. Aff. ¶¶ 6-24.) and subsequently confirmed by Huron's review of Giga's actual bank records, knowing that these statements were false and/or misleading.

52.     Bernardi's and Cardak's false statements were material. The statements related to Giga's financial performance and profitability, which were critical to Crystal's underwriting process and decision of whether to lend to Giga.

53.     Bernardi's and Cardak's false statements were made with the intention to mislead Crystal as it made the decision of whether to loan money to Giga.  Bernardi and Cardak made these false statements knowing that Crystal would rely on them and with the intention that it do so.

54.     In the alternative, Bernardi and Cardak made the false statements with reckless disregard for their truth and knowing that Crystal would rely on the false statements in making its decision about whether or not to loan money to Giga.

55.     These misrepresentations created liabilities separate, apart from, and collateral to Giga's and Giga Holding's contractual obligations to Crystal under the Loan Agreement and related Loan Documents.

56.     Crystal justifiably relied on Bernardi's and Cardak's false and misleading statements and on the falsified Financial Documents when it elected to make the $25 million Loan to Giga and had a right to rely on these false statements. Giga would not have qualified for the loan but for the fraudulent misrepresentations made by Bernardi and Cardak to Crystal.

57.     Bernardi's and Cardak's conduct was willful and malicious, in addition to showing a conscious disregard for the rights of Crystal to make a fully-informed decision when entering into the Loan Agreement with Giga. Their conduct is also ongoing and continuing.

58.     Crystal is therefore entitled to compensatory damages in the amount of $25,415,444.44, which equals the full amount of principal plus interest due through November 20, 2019. Crystal is also entitled to interest on the principal balance outstanding on the Loan according to the Loan Agreement's stated interest rate through the entry of judgment. Crystal is also entitled to interest on the judgment at the rate allowed by law. Crystal is further entitled to damages for all other fees, costs, forensic accounting fees, and attorneys' fees associated with the enforcing its rights, including but not limited to, events of default, collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein. Additionally, Crystal is entitled to punitive damages against Defendants in an amount to be determined at trial.

## COUNT II: CONSTRUCTIVE FRAUD

59.     Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 58 of this Verified Complaint, as if set forth fully herein.

60.     Bernardi and Cardak induced Crystal into entering into the Loan Agreement by making misrepresentations regarding Giga's financial performance and profitability. Specifically, Bernardi and Cardak made, or caused to be made, the false and/or misleading statements contained in the bank records and financial statements as identified in the Platt

Affidavit (Platt. Aff. ¶¶ 6-24.) and subsequently confirmed by Huron's review of Giga's actual bank records, knowing or with reason to know that these statements were false and/or misleading, or with reckless disregard for the truth of their assertions.

61.     Bernardi's and Cardak's false statements were material. The statements directly related to Giga's financial performance and profitability, and were critical to Crystal's underwriting process and decision of whether to lend to Giga.

62.     Even if Bernardi's and Cardak's false statements were not made with an intention to mislead Crystal, but made innocently or negligently, the statements were, in fact, a misrepresentation of material facts that Bernardi and Cardak intended Crystal to rely upon when making its decision of whether to loan money to Giga.   Bernardi's and Cardak's misrepresentations regarding the financial condition and historical financial performance and results of Giga were with respect to matters and facts particularly within their control, and as to which they knew, or reasonably should have known, that Crystal would rely.

63.     Crystal justifiably relied on Bernardi's and Cardak's false and misleading statements and on the falsified Financial Documents when it elected to make the $25 million Loan to Giga. Giga would not have qualified as eligible for the loan but for the fraudulent misrepresentations made by Bernardi, and Cardak to Crystal.

64.     Bernardi's and Cardak's conduct, misrepresenting Giga's financial performance and profitability, showed a conscious disregard for the rights of Crystal to make a fully-informed decision when entering into the Loan Agreement with Giga. Their conduct is also ongoing and continuing.

65.     Crystal is therefore entitled to compensatory damages in the amount of $25,415,444.44, which equals the full amount of principal plus interest due through November

16

20, 2019. Crystal is also entitled to interest on the principal balance outstanding on the Loan according to the Loan Agreement's stated interest rate through the entry of judgment. Crystal is also entitled to interest on the judgment at the rate allowed by law. Crystal is further entitled to damages for all other fees, costs, forensic accounting fees, and attorneys' fees associated with the Loan Agreement, including but not limited to, events of default, collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein.

## COUNT III: COMMON LAW CIVIL CONSPIRACY

66. Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 65 of this Verified Complaint, as if set forth fully herein.

67. Bernardi and Cardak conspired to defraud Crystal by providing Crystal with false and/or misleading financial information about Giga, including the Financial Documents, all as part of their combination and/or agreement to induce Crystal into making a loan to Giga that it would not have made had it known the truth about Giga's finances.

68. Bernardi's and Cardak's conduct was either unlawful or, if lawful, was for the purpose of accomplishing the unlawful result of defrauding Crystal by inducing it to make a loan to Giga based on the false and/or misleading financial information that Bernardi and Cardak provided.

69. Bernardi's and Cardak's conduct was malicious as their concerted effort was made without lawful justification and with the intent to injure Crystal's business through Giga obtaining a loan from Crystal that Giga would not have qualified as eligible for absent Bernardi's and Cardak's efforts.

70. Bernardi's and Cardak's concerted effort to falsify Giga's financial statements and bank records and misrepresent the true numbers of Giga's customer-base and liquid assets violated Crystal's legally protected interest to not be defrauded in its business dealings.

71. Because of the concerted effort by Bernardi and Cardak, Crystal made the $25 million Loan to Giga. Defendants' conspiracy has damaged Crystal because Giga would not have qualified for the loan but for Defendants' fraudulent misrepresentations to Crystal, and because Giga has defaulted in its performance of the Loan and is unable to repay the Loan.

72. Crystal is therefore entitled to compensatory damages in the amount of $25,415,444.44, which equals the full amount of principal plus interest due through November 20, 2019. Crystal is also entitled to interest on the principal balance outstanding on the Loan according to the Loan Agreement's stated interest rate through the entry of judgment. Crystal is also entitled to interest on the judgment at the rate allowed by law. Crystal is further entitled to damages for all other fees, costs, forensic accounting fees, and attorneys' fees associated with the Loan Agreement, including but not limited to, events of default, collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein. Additionally, Crystal is entitled to punitive damages against Defendants in an amount to be determined at trial.

## COUNT IV: BUSINESS CONSPIRACY UNDER
## THE VIRGINIA CONSPIRACY ACT, VA. CODE § 18.2-499, *et seq.*

73. Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 72 of this Verified Complaint, as if set forth fully herein.

74. Bernardi and Cardak conspired to willfully and maliciously injure Crystal in its trade or business by providing Crystal with false and/or misleading financial information about Giga, including the Financial Documents, all as part of their combination and/or agreement to

induce Crystal into making a loan to Giga that it would not have made had it known the truth about Giga's finances.

75.     Bernardi's and Cardak's conduct was malicious as their concerted effort was made without lawful justification and with the intent to injure Crystal's business through Giga obtaining a loan from Crystal that Giga would not have qualified as eligible for absent Bernardi's and Cardak's efforts.

76.     Bernardi's and Cardak's concerted effort to falsify Giga's financial statements and bank records and misrepresent the true numbers of Giga's customer-base and liquid assets violated Crystal's legally protected interest to not be defrauded in its business dealings.

77.     Because of the concerted effort by Bernardi and Cardak, Crystal made the $25 million Loan to Giga. This Loan damaged Crystal because Giga would not have qualified for the loan but for Defendants' fraudulent misrepresentations to Crystal, and because Giga has defaulted in its performance of the Loan and is unable to repay the Loan.

78.     Crystal is therefore entitled to compensatory damages in the amount of $25,415,444.44, which equals the full amount of principal plus interest due through November 20, 2019. Crystal is also entitled to interest on the principal balance outstanding on the Loan according to the Loan Agreement's stated interest rate through the entry of judgment. Crystal is also entitled to interest on the judgment at the rate allowed by law. Crystal is further entitled to damages for all other fees, costs, forensic accounting fees, and attorneys' fees associated with the Loan Agreement, including but not limited to, events of default, collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein. Additionally, Crystal is entitled to treble damages against Defendants in an amount not less than $76,246,333.32, which

equals three-fold the damages sustained by Crystal, and punitive damages against Defendants in an amount to be determined at trial.

### COUNT V: FRAUDULENT TRANSFER UNDER VA. CODE § 55.1-400
### (Plaintiff v. Bernardi)

79.     Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 78 of this Verified Complaint, as if set forth fully herein.

80.     Prior to and after the closing of the Loan, at the time when Bernardi was Chief Executive Officer, President, and Secretary of Giga; and Cardak was Chief Financial Officer and Treasurer of Giga, Giga made one or more transfers to Bernardi with the intent to delay, hinder, or defraud existing and future creditors of Giga, including Crystal.

81.     On information and belief, the amounts of such transfers were at least $2,075,000.

82.     Crystal, as a creditor of Giga, is entitled to a declaratory ruling that all such transfers made to Bernardi with the intent to delay, hinder, or defraud creditors are void.

83.     Pursuant to Va. Code § 55.1-402, Crystal is entitled to a money judgment against Bernardi in the amount of such fraudulent conveyances, and is also entitled to a lien against Bernardi and his assets to the extent of such fraudulent conveyances, effective from the date of filing of this Verified Complaint.

### COUNT VI: FRAUDULENT TRANSFER UNDER VA. CODE § 55.1-400
### (Plaintiff v. Cardak)

84.     Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 83 of this Verified Complaint, as if set forth fully herein.

85.     Prior to and after the closing of the Loan, at the time when Bernardi was Chief Executive Officer, President, and Secretary of Giga, and Cardak was Chief Financial Officer and

Treasurer of Giga, Giga made one or more transfers to Cardak with the intent to delay, hinder, or defraud existing and future creditors of Giga, including Crystal.

86.     On information and belief, the amounts of such transfers were at least $730,999.

87.     Crystal, as a creditor of Giga, is entitled to a declaratory ruling that all such transfers made to Cardak with the intent to delay, hinder, or defraud creditors are void.

88.     Pursuant to Va. Code § 55.1-402, Crystal is entitled to a money judgment against Cardak in the amount of such fraudulent conveyances, and is also entitled to a lien against Cardak and his assets to the extent of such fraudulent conveyances, effective from the date of filing of this Verified Complaint.

## COUNT VII: VOIDABLE VOLUNTARY TRANSFER UNDER VA. CODE § 55.1-401
### (Plaintiff v. Bernardi)

89.     Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 88 of this Verified Complaint, as if set forth fully herein.

90.     Since the closing of the Loan, at the time when Bernardi was Chief Executive Officer, President, and Secretary of Giga, and Cardak was Chief Financial Officer and Treasurer of Giga, Giga made one or more transfers to Bernardi without receiving valuable consideration in return.

91.     On information and belief, the amount of such transfers was at least $600,000.

92.     Such transfers were made while Giga was insolvent or had the effect of rendering Giga insolvent.

93.     Crystal, as a creditor of Giga, is entitled to a declaratory ruling that all transfers made to Bernardi after closing of the Loan made by Giga without receiving valuable consideration from Bernardi are void.

94.     Pursuant to Va. Code § 55.1-402, Crystal is entitled to a money judgment against Bernardi in the amount of such fraudulent conveyances, and is also entitled to a lien against Bernardi and his assets to the extent of such fraudulent conveyances, effective from the date of filing of this Verified Complaint.

## COUNT VIII: VOIDABLE VOLUNTARY TRANSFER UNDER VA. CODE § 55.1-401
### (Plaintiff v. Cardak)

95.     Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 94 of this Verified Complaint, as if set forth fully herein.

96.     Since the closing of the Loan, at the time when Bernardi was Chief Executive Officer, President, and Secretary of Giga, and Cardak was Chief Financial Officer and Treasurer of Giga, Giga made one or more transfers to Cardak without receiving valuable consideration in return.

97.     On information and belief, the amount of such transfers was at least $200,000.

98.     Such transfers were made while Giga was insolvent or had the effect of rendering Giga insolvent.

99.     Crystal, as a creditor of Giga, is entitled to a declaratory ruling that all transfers made to Cardak after closing of the Loan made by Giga without receiving valuable consideration from Cardak are void.

100.    Pursuant to Va. Code § 55.1-402, Crystal is entitled to a money judgment against Cardak in the amount of such fraudulent conveyances, and is also entitled to a lien against Cardak and his assets to the extent of such fraudulent conveyances, effective from the date of filing of this Verified Complaint.

## COUNT IX: PRETRIAL LEVY OR SEIZURE OF ATTACHMENT UNDER VA CODE § 8.01-534
### (Plaintiff v. Bernardi)

101.    Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 100 of this Verified Complaint, as if set forth fully herein.

102.    As part of Huron's investigation of Giga's records, Huron uncovered information indicating that Bernardi improperly funneled loan proceeds to at least one family member he fraudulently maintained on Giga's payroll.

103.    It is likely that Bernardi has assigned or disposed of, or is about to assign or dispose of his estate, or some part thereof, with intent to hinder, delay or defraud Plaintiff.

104.    Based on this conduct and pursuant to Va. Code § 8.01-534, Crystal is entitled to a pretrial levy or seizure of Bernardi's assets.

## COUNT X: PRETRIAL LEVY OR SEIZURE OF ATTACHMENT UNDER VA CODE § 8.01-534
### (Plaintiff v. Cardak)

105.    Crystal realleges and incorporates herein by reference the allegations of numbered paragraphs 1 through 104 of this Verified Complaint, as if set forth fully herein.

106.    It is common for Cardak to spend weeks, if not months, abroad. He spent the majority of the loan origination process overseas in Turkey.

107.    As soon as Huron communicated its intent to take control of Giga, Cardak was removed from Giga's corporate website. Huron has since learned that Cardak did not show up for work again. Huron remains unaware of Cardak's whereabouts.

108.    At best, it is likely that Cardak removed, or is about to remove, himself out of the Commonwealth with the intent to change his domicile. At worst, Cardak has absconded or is

about to abscond or has concealed or is about to conceal himself or his property to the injury of Plaintiff.

109.    Based on this conduct and pursuant to Va. Code § 8.01-534, Crystal is entitled to a pretrial levy or seizure of Cardak's assets.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Crystal Financial LLC, respectfully requests that judgment be entered in its favor and against the Defendants, Robert P. Bernardi and Nihat Cardak, both jointly and severally, as follows:

1.    With respect to all counts, that judgment be entered against Defendants, and each of them, as appropriate to the particular count;

2.    As to Count I, as to Defendants, and both of them, in the amount of $25,415,444.44, plus interest on the principal balance outstanding on the Loan according to the Loan Agreement's stated interest rate through the entry of judgment, and interest on the judgment at the rate allowed by law. Crystal is further entitled to compensatory damages for all other fees, costs, forensic accounting fees, and attorneys' fees associated with the Loan Agreement, including but not limited to, events of default, collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein, plus punitive damages in an amount to be determined at trial, reasonable attorneys' fees and other costs of collection, and court costs;

3.    As to Count II, as to Defendants, and both of them, in the amount of $25,415,444.44, plus interest on the principal balance outstanding on the Loan according to the Loan Agreement's stated interest rate through the entry of

judgment, and interest on the judgment at the rate allowed by law. Crystal is further entitled to compensatory damages for all other fees, costs, forensic accounting fees, and attorneys' fees associated with the Loan Agreement, including but not limited to, events of default, collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein, reasonable attorneys' fees and other costs of collection, and court costs;

4.      As to Count III, as to Defendants, and both of them, in the amount of $25,415,444.44, plus interest on the principal balance outstanding on the Loan according to the Loan Agreement's stated interest rate through the entry of judgment, and interest on the judgment at the rate allowed by law. Crystal is further entitled to compensatory damages for all other fees, costs, forensic accounting fees, and attorneys' fees associated with the Loan Agreement, including but not limited to, events of default, collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein, plus punitive damages in an amount to be determined at trial, reasonable attorneys' fees and other costs of collection, and court costs;

5.      As to Count IV, as to Defendants, and both of them, in the amount of $25,415,444.44, plus interest on the principal balance outstanding on the Loan according to the Loan Agreement's stated interest rate through the entry of judgment, and interest on the judgment at the rate allowed by law. Crystal is further entitled to treble damages in an amount not less than $76,246,333.32, which is three-fold the damages Crystal sustained, and punitive damages in an

amount to be determined at trial, plus reasonable attorneys' fees and other costs of collection, and court costs;

6.      As to Count V, as to Bernardi in an amount to be proven at trial the amount of any and all fraudulent transfers made by Giga or Giga Holdings to Bernardi which were made with the intent to delay, hinder, or defraud creditors, including Crystal, and interest on the judgment at the rate allowed by law. Crystal is further entitled to compensatory damages for all other fees, costs and attorneys' fees associated with the collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein, plus reasonable attorneys' fees and other costs of collection, and court costs;

7.      As to Count VI as to Cardak in an amount to be proven at trial the amount of any and all fraudulent transfers made by Giga or Giga Holdings to Cardak which were made with the intent to delay, hinder, or defraud creditors, including Crystal and interest on the judgment at the rate allowed by law. Crystal is further entitled to compensatory damages for all other fees, costs and attorneys' fees associated with the collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein, plus reasonable attorneys' fees and other costs of collection, and court costs;

8.      As to Count VII as to Bernardi in an amount to be proven at trial the amount of any and all fraudulent transfers made by Giga or Giga Holdings to Bernardi which were made without reasonably equivalent value to the transferor, and interest on the judgment at the rate allowed by law. Crystal is further entitled to compensatory damages for all other fees, costs and attorneys' fees associated with

the collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein, plus reasonable attorneys' fees and other costs of collection, and court costs;

9.    As to Count VIII as to Cardak in an amount to be proven at trial the amount of any and all fraudulent transfers made by Giga or Giga Holdings to Cardak which were made without reasonably equivalent value to the transferor, and interest on the judgment at the rate allowed by law. Crystal is further entitled to compensatory damages for all other fees, costs and attorneys' fees associated with the collection efforts, and preparing and filing the pleadings in this case and prosecuting the claims herein, plus reasonable attorneys' fees and other costs of collection, and court costs;

10.    As to Counts IX and X a pretrial levy or seizure of all Bernardi's and Cardak's assets.

11.    Granting Crystal such other relief as the Court deems just and proper.


Dated: November 27, 2019                    Respectfully submitted,

                                            **CRYSTAL FINANCIAL LLC**


                                            By: */s/ Richard E. Hagerty*
                                            Richard E. Hagerty, VSB No. 47673
                                            TROUTMAN SANDERS LLP
                                            401 9th Street NW, Suite 1000
                                            Washington, DC 20004
                                            Telephone: (202) 274-1910
                                            Facsimile: (703) 448-6520
                                            richard.hagerty@troutman.com

                                            Andrew B. Buxbaum, VSB No. 46713
                                            Ryan J. Strasser, VSB No. 80979
                                            Lauren H. Geiser, VSB No. 92906

TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1200
Facsimile: (804) 697-1339
andrew.buxbaum@troutman.com
ryan.strasser@troutman.com
lauren.geiser@troutman.com

*Counsel for Plaintiff*

## **VERIFICATION**

I declare under penalty of perjury that I have read the foregoing Verified Complaint and

that the contents thereof are true and correct.

Date: **11/27/19**

Michael L. Pizette
Co-Chief Executive Officer
Crystal Financial LLC